UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOSHUA KENNEY,

    Plaintiff,

    v().

BATH IRON WORKS CORPORATION,

    Defendant.

Civil Action No.

COMPLAINT
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Joshua Kenney ("Mr. Kenney"), by and through undersigned counsel, and complains against the Defendant, Bath Iron Works Corporation ("BIW"), as follows:

JURISDICTION AND PARTIES

1.    This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.,* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

2.    Mr. Kenney is a United States citizen residing in the Town of Sebago, County of Cumberland, State of Maine.

3.    BIW is a Maine business corporation that operates a shipyard in Bath, Maine

4.    BIW has over 6,000 employees.

5.    BIW had 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

6.    This Court has subject matter jurisdiction over Mr. Kenney's federal and state claims pursuant to 28 U.S.C. §§ 1331and 1367.

7. On or about February 13, 2019, Mr. Kenney filed a timely Charge/Complaint of Discrimination against BIW alleging unlawful disability discrimination with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

8. On or about February 12, 2020, the MHRC issued a Notice of Right to Sue with respect to Mr. Kenney's claims under the MHRA.

9. On or about February 14, 2020, the EEOC issued a Notice of Right to Sue with respect to Mr. Kenney's claims under the ADA.

10. Mr. Kenney has exhausted his administrative remedies with respect to all claims set forth in this Complaint that require administrative exhaustion.

## FACTUAL ALLEGATIONS

11. On June 14, 2018, Mr. Kenney applied for a job as a shipfitter at BIW.

12. BIW made Mr. Kenney a conditional offer of employment with a start date of August 6, 2018.

13. On July 13, 2018, Mr. Kenney accepted BIW's conditional offer of employment.

14. On July 19, 2018, Mr. Kenney went to a post-offer, pre-employment physical at BIW's medical department. The physical was conducted by Linda Kelly, NP.

15. When asked by Ms. Kelly to disclose what surgeries he had in the past, Mr. Kenney reported that he had a hernia repair soon after he was born, an elbow procedure in about 2011, a partial rotator cuff surgery in 2014, and a partial bicep tendon tear repair in 2018.

16. Ms. Kelly wanted to see Mr. Kenney's medical records from 2010 to 2018.

17. Ms. Kelly asked Mr. Kenney to sign an authorization allowing his doctors to release medical records from 2010 to 2018.

18. Mr. Kenney agreed to sign, and did sign, the authorization form on July 19, 2018.

19. Mr. Kenney also signed a release with OA Centers for Orthopedics and asked them to fax his records to BIW.

20. Ms. Kelly replied by email about an hour later, thanking Mr. Kenney for his "prompt attention to this issue" and letting him know that she faxed the BIW form, too.

21. On about August 1, 2018, someone from BIW – not Ms. Kelly – called Mr. Kenney and said they needed more records from his doctors.[1]

22. Mr. Kenney drove to the doctor's office and convinced them to fax additional records immediately so that he could start work.

23. Mr. Kenney's provider was prompt and faxed additional records to BIW on about August 2, 3, and 6, 2018.

24. On August 16, 2018, Mr. Kenney sent an email to Ms. Kelly asking her to verify that she received all the medical records she needed and to provide a status update. Ms. Kelly did not respond.

25. As of August 21, 2018, BIW had Mr. Kenney's complete medical records. Mr. Kenney spoke to someone in HR and was told that the medical department had confirmed that they had all the information they needed.

26. One of the records BIW received was a letter from Mr. Kenney's doctor, Kathryn Hanna, MD, dated August 21, 2018, stating that he was released to work with no restrictions beginning on April 11, 2018.

27. Dr. Hanna is an Orthpaedic Surgeon and Hand Specialist who completed a bicep tendon repair on Mr. Kenney in January 2018.

---

[1] Mr. Kenney disputes BIW's claim that Ms. Kelly had multiple conversations with Mr. Kenney about getting his medical records.

28. Dr. Hanna had substantial expertise and personal knowledge regarding Mr. Kenney's surgery, recovery, and ability to work without restrictions.

29. Nia Foderingham, MD, is the Chief of Occupational Medicine for BIW.

30. Dr. Foderingham took a medical leave of absence beginning on August 25, 2018.

31. BIW claims that in Dr. Foderingham's absence, Dr. Shilpa Gowda reviewed Mr. Kenney's records and recommended that BIW not hire Mr. Kenney due to his underlying medical conditions.

32. No one at BIW asked Mr. Kenney to perform any physical tasks to see if he had any functional limitations on his ability to lift, carry, reach or perform any other physical tasks before making this decision.

33. No one from BIW spoke to Dr. Hanna to learn why, in her opinion, Mr. Kenney had no current work restrictions.

34. Dr. Gowda did not write a report and did not submit a statement to the MHRC regarding her alleged review of Mr. Kenney's records and her recommended decision.

35. Kate Griffin is Manager for Talent Acquisition, Training & Organizational Development for BIW.

36. On September 10, 2018, Ms. Griffin spoke to Mr. Kenney by telephone and told Mr. Kenney that the job offer was withdrawn because he allegedly did not pass the medical screening.

37. On about September 21, 2018, Mr. Kenney applied for a job at BIW as a Database Technician. Mr. Kenney was not interviewed or offered the job.

38. Mr. Kenney applied for several other positions at BIW at about the same time and received no response to his applications.

39. On about September 24, 2018, Mr. Kenney contacted BIW through counsel to ask why he did not pass the medical screening for the shipfitter job.

40. Almost three months later, on about December 17, 2018, Dr. Foderingham wrote a report justifying BIW's failure to hire Mr. Kenney.

41. Dr. Foderingham admitted that BIW had no knowledge or record of why Dr. Gowda (or someone else) determined that Mr. Kenney did not pass the medical screening.

42. Dr. Foderingham did not speak to Mr. Kenney or his doctor before writing her report.

43. Dr. Foderingham's report is a post-hoc rationalization for BIW's failure and refusal to hire Mr. Kenney as a shipfitter.

44. When Mr. Kenney applied for positions at BIW in the same manner as other applicants, e.g., the Database Tech job, Mr. Kenney was rejected or received no response which suggests that he is being treated differently and worse than similarly situated applicants because of disability discrimination and/or retaliation for filing this complaint with the MHRC and EEOC.

45. Mr. Kenney can perform the essential duties of the shipfitter position, with or without reasonable accommodations and was able to do so at the time of his application to BIW and at the time BIW withdrew the job offer.

46. When Mr. Kenney applied for the shipfitter position at BIW, his last job involved strenuous physical labor working in construction, maintenance and mowing for a municipality. The reason Mr. Kenney left that job was due to layoff.

47. After BIW failed and refused to hire Mr. Kenney as a shipfitter, he worked as a ski lift operator, which involved strenuous physical labor.

48. BIW regarded Mr. Kenney as having a disability. For example, BIW claims that it failed to hire Mr. Kenney because it perceived Mr. Kenney as a person with medical conditions that would preclude him from performing the duties of the shipfitter job.

49. BIW perceived Mr. Kenney as a person with a condition that substantially limited him in the major life activity of working and as a person with a physical impairment.

50. Mr. Kenney also had a record of disability as set out above.

51. BIW violated the MHRA and ADA by refusing to hire Mr. Kenney due to his record of disability and/or because he was regarded as having or likely to develop a disability.

52. When an employer refuses to hire an employee due to a real or perceived disability, the burden of proof is on the employer to prove that the employee, because of his or her disability, is unable to perform the duties or to perform the duties in a manner that would not endanger the health or safety of the individual or others.

53. BIW is unable to prove, to a reasonable probability, that Mr. Kenney was unable to perform the job or unable to perform it safely.

54. BIW is unable to prove that it had an objective basis, at the time it withdrew the job offer, to conclude that Mr. Kenney was unable to perform the job or perform it safely.

55. Mr. Kenney was able to perform the job safely and his medical providers believed that Mr. Kenney was able to perform the job and perform it safely.

56. BIW cannot show that Mr. Kenney was unable to perform the duties of shipfitter or perform them safely when they withdrew the job offer on September 10, 2018.

57. Defendant failed or refused to hire him and otherwise discriminated against him as an applicant for employment because of physical disability.

58. Defendant failed or refused to hire him and otherwise discriminated against him as an applicant for employment because he filed a complaint of discrimination with the MHRC and EEOC.

59. Defendant discriminated against a qualified individual on the basis of disability in regard to job application procedures, the hiring of employees, and other terms, conditions, and privileges of employment.

60. Defendant limited, segregated, or classified Mr. Kenney as a job applicant or employee in a way that adversely affected his opportunities or status because of disability discrimination.

61. Defendant participated in a contractual or other arrangement or relationship that had the effect of subjecting Plaintiff to discrimination prohibited by the ADA and MHRA.

62. Defendant utilized standards, criteria, or methods of administration that had the effect of discrimination based on disability.

63. Defendant used qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

64. Defendant conducted a medical examination after an offer of employment had been made to Plaintiff and illegally used the results of the examination to deprive Plaintiff of his rights under the MHRA and the ADA.

65. BIW acted intentionally and with deliberate indifference to Mr. Kenney's rights.

## COUNT I: MHRA

66. Paragraphs 1-65 are incorporated by reference.

67. BIW's conduct violates the MHRA.

## COUNT II: ADA

68. Paragraphs 1-67 are incorporated by reference.

69. BIW's conduct violates the ADA.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendant to be in violation of his rights;

B. Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C. Order Defendant to instate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's discrimination;

E. Award equitable-relief for back pay, benefits and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award liquidated damages in an amount to be determined at trial;

I. Award nominal damages;

J. Award attorney's fees, including legal expenses, and costs;

K. Award prejudgment interest;

L. Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability;

M. Require Defendant's President and/or CEO to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination in the future;

N. Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

O. Require that Defendant train all management level and medical department employees on the protections afforded by the MHRA, ADA and Rehab Act;

P. Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant unlawfully failed to hire him in August 2018 because of disability discrimination; and

Q. Grant to Plaintiff such other and further relief as may be just and proper.


Dated: April 3, 2020                                  */s/* Chad T. Hansen

                                            Attorney for the Plaintiff

                                            EMPLOYEE RIGHTS GROUP
                                            92 Exchange Street 2nd floor
                                            Portland, Maine 04101
                                            Tel. (207) 874-0905
                                            Fax (207) 874-0343
                                            chad@employeerightslaw.attorney